OPINION
This is an accelerated calendar case submitted on the record and the brief of appellant, the State of Ohio. On July 18, 2000, the Ashtabula County Court of Common Pleas granted a motion to dismiss in favor of appellee, Joseph Smith ("Smith"). The state appeals as a matter of right pursuant to R.C. 2945.67. Smith had been indicted for receiving stolen property in violation of R.C. 2913.51(A), a third degree felony based upon the value of the property allegedly stolen. Smith has failed to file a brief with this court.
The property Smith allegedly "received" was an Arctic Cat Snowmobile with a retail value of $18,000. Smith's indictment alleged he knew or had reasonable cause to believe that the property was stolen. Smith had a live-in companion, Jacqueline Harris, who was indicted separately for the same offense. Her case was assigned to a different judge. Ms. Harris claimed she purchased the snowmobile for $500 from a man named "Dave" in a bar in Madison, Ohio. Dave then delivered the snowmobile to Smith's home with his pick-up truck. Smith claimed the snowmobile belonged to Ms. Harris, and that he thought she bought it legitimately.
Smith was arrested on February 15, 2000. Initially, Smith's bond was set at $10,000, which he was unable to post. After a preliminary hearing, the matter was bound over to the grand jury. The grand jury indicted Smith on May 3, 2000. Smith was incarcerated from February 15, 2000, until April 7, 2000, a period of fifty-two days. He was then released on a personal recognizance bond.
On May 17, 2000, the trial court ordered the state to provide discovery at least seven days prior to the pretrial. A pretrial hearing was set for June 19, 2000. On June 7, 2000, Smith filed a standard request for discovery, which included a request for "all statements" given to any police department "concerning this defendant" by any person. The state's response, dated June 11, 2000, did not include any written statements except a copy of the statement Smith had himself given. The state's response included a one-sentence summary of the oral statement(s) given by Ms. Harris, which stated Ms. Harris claimed that she bought the snowmobile from a man named "Dave" in a bar in Madison for $500.
The state, in providing discovery as required by Crim.R. 16, filed a notice of submission of discovery with the court. At the pretrial hearing on June 17, 2000, the prosecutor averred that, to the best of his knowledge, a complete response had been submitted. On July 5, 2000, Smith filed a motion to compel discovery, alleging the state had withheld a statement of Ms. Harris. Smith also requested copies of any written summaries of oral statements made by Ms. Harris. At a hearing on the matter on July 10, the state averred it had no written statements from Ms. Harris. Smith proffered the testimony of Ms. Valdez, Ms. Harris' mother, who would testify she saw Ms. Harris sign two separate written statements, one for a Deputy Roach, the other for a Detective Keane. The court continued the hearing until July 13, 2000, in order to have the two officers give testimony on the matter. The court cautioned the state that the defense was entitled to review any written or oral statements made by Ms. Harris, and that failure to provide them might result in dismissal of the charges against Smith.
At the hearing on July 13, 2000, only Deputy Roach testified for the state. He testified that only one statement was taken from Ms. Harris, and that it was taken by Detective Keane. That statement was provided to the defense at or immediately before the hearing. The court believed the testimony of the Deputy and, therefore, discounted the testimony of Ms. Valdez, who testified that there were two statements. The court found that the written statement was not intentionally withheld by the prosecutor and, at that point, the defense had been provided with the written statement as well as summaries of oral statements that were made. The court decided sanctions were not warranted, and the matter was to proceed to trial on July 18, 2000.
On July 17, 2000, defense counsel obtained a previously undisclosed police report that contained a more detailed statement from Ms. Harris. The court characterized this statement as "more descriptive" in terms of potentially exculpatory information contained therein, and stated it contained information that apparently was "edited by the prosecutors" in their summaries. Smith had also subpoenaed a police report on the theft of the snowmobile and a sheriff's deputy had delivered the subpoena to the prosecutor's office. The state had made no effort to obtain and provide the report to defense counsel. The statement of Ms. Harris, which was finally provided on July 13, 2000, was missing one page out of four, and thus was not the complete statement.
A jury was impaneled on July 18, 2000. Prior to trial, counsel met in chambers, first informally, then on the record. As a result of the combination of flaws in discovery, the defense stated it was not prepared to proceed with the trial and requested a dismissal of the charge.
In reviewing events, the court noted it had ordered discovery to be completed by June 16, 2000. The trial court found the prosecution had not complied. It noted that on July 10, 2000, the state maintained there was no written statement by Ms. Harris. Then, at the hearing on July 13, 2000, the state produced an incomplete written statement. When the state turned that statement over it was missing a page, which the court regarded as inexcusable. The court noted that at the July 13, 2000, hearing, Deputy Roach did not mention his own summary report. The court noted there was a material difference between the oral summaries previously provided and the oral summary in the police report obtained by defense counsel the day before trial. Additionally, the court found that the police report on the underlying theft, which the prosecutor neglected to obtain and provide, was material to the defense. Overall, while the court declined to conclude the state had acted intentionally, the court concluded that the state had been grossly negligent in meeting its duties.
The court then considered the question of the appropriate sanction. The court was cognizant of the fact it was required to impose the least severe, appropriate, sanction.
Pursuant to R.C. 2945.71(C)(2), Smith had to be brought to trial within two hundred seventy days of his arrest. For purposes of calculating the days remaining in a speedy trial analysis, the fifty-two days of incarceration counted as one hundred fifty-six days. Another one hundred days had passed since Smith's release from custody on April 7, 2000. Thus, on July 18, 2000, only fourteen days remained within which to commence the trial inside the statutory deadline.
The court stated that it had ordered discovery completed a month prior to trial to allow defense counsel adequate time to properly investigate exculpatory information. The court concluded that the defendant would have to forgo a proper investigation if the matter was set for trial within the speedy trial deadline. Therefore, the court concluded that a sanction less severe than dismissal would force Smith to waive his right to a speedy trial. The court concluded that the state had an obligation to provide discovery and that it did not meet its obligation. The court stated that it could not condone this course of events by forcing the defendant to waive his constitutional and statutory rights to a speedy trial. The court determined the only appropriate sanction was a dismissal of the charge, and granted Smith's oral motion to dismiss. We agree. From this judgment, the state timely filed its notice of appeal, assigning the following error:
 "The trial court abused its discretion by failing to impose the least severe sanction consistent with the purpose of the rules of discovery."
 "In deciding whether to impose sanctions pursuant to Crim.R. 16(E)(3), the trial court is vested with a certain amount of discretion to decide what, if any, sanction should be imposed under the circumstances." State v. Green (Dec. 26, 1997), Trumbull App. No. 96-T-5491, unreported, 1997 Ohio App. LEXIS 5861, at *10, citing State v. Parson (1983), 6 Ohio St.3d 442, 445. Crim.R. 16(E)(3), which provides for sanctions, states:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." (Emphasis added.)
 Appellate review is limited to a determination of whether the trial court's judgment concerning sanctions constituted an abuse of discretion. Green at *10, citing Parson at 445. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. The trial court's discretion, however, is limited by the Supreme Court of Ohio's holding in Lakewood v. Papadelis
(1987), 32 Ohio St.3d 1, wherein the court stated:
 "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Id. at paragraph two of syllabus.
 "The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." State v. Howard (1978), 56 Ohio St.2d 328, 333. "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party." Papadelis, at 3. The overall purpose of the discovery rules is to produce a fair trial. State v. Mitchell
(1975), 47 Ohio App.2d 61, 80.
The state argues that the trial court abused its discretion by failing to impose the least severe sanction. By dismissing the case, the court imposed the ultimate sanction, which the state argues was not consistent with the purpose of the discovery rules — to produce a fair trial. The state argues the court should have granted a short continuance, and that this could have been done and the matter brought to trial within the time remaining on the statutory speedy trial limitation.
In support of their argument, the state cites State v. Horton (1993),90 Ohio App.3d 157, wherein the Tenth Appellate District reversed a trial court's dismissal of a criminal complaint. The trial court dismissed the case because the state failed to comply with discovery, and continuing the matter would cause the trial to occur outside of the statutory deadline for a speedy trial as a result of the state's failure to comply. In reversing the judgment, the appellate court concluded that dismissal was not the least severe, appropriate sanction and that, among other possible sanctions, the court could have continued the trial date in conjunction with the imposition of sanctions. Horton provided no analysis of the defendant's right to a speedy trial, except to say that, if Horton was innocent, he did have a right to a speedy trial. Id. at 160.
In another closely analogous case, State v. Gragg (May 12, 1995), Ross App. No. 94CA2038, unreported, 1995 Ohio App. LEXIS 2022, the defendant asserted his right to a speedy trial. The state produced a new witness the day before trial. The defendant specifically refused to ask for a continuance and, instead, asked that the witness be excluded from testifying on the grounds that the failure to provide his name on a timely basis constituted a sanctionable discovery violation. Under the authority of R.C. 2945.72(H), which allows the time for a trial to be extended for a "period of any reasonable continuance granted other than upon the accused's own motion," the trial court, sua sponte, continued the trial for one week, placing the trial date four days beyond the statutory time limitation. In brief, the Fourth District Court of Appeals concluded that the continuance was reasonable and that, although the trial was conducted four days beyond the statutory time limitation, the prescribed time is not absolute in all circumstances. Therefore, the court concluded, since the continuance was reasonable, the extension four days beyond the statutory limit for a speedy trial was reasonable and did not violate the defendant's right to a speedy trial. The judgment of the trial court was affirmed. Id.
In a contrasting case, State v. Sullivan (Aug. 6, 1990), Tuscarawas App. No. 89AP120094, unreported, 1990 Ohio App. LEXIS 3567, the state failed to timely provide the defendant with exculpatory evidence in violation of the discovery rules. The trial court found that while the prosecutor had no culpability in the situation, the investigating officer(s) were at fault for failing to turn a statement over. The trial court dismissed the case. The Fifth District Court of Appeals concluded that the trial court did not abuse its discretion by dismissing the case, and that its judgment was not inconsistent with the principle the Supreme Court of Ohio set forth in Papadelis. The withholding of exculpatory evidence by the state violates a defendant's right to due process. The court stated that the trial court may "send a message" to law enforcement within the community that violations of due process will not be tolerated. The court concluded that, under the circumstances, it was within the court's discretion to impose a "severe" sanction. Id. We intend to send the same message today. A fair trial is not one in which the state is permitted, either by malice or negligence, to force a defendant to go forward without adequate preparation.
In a typical speedy trial analysis, the defendant presents a prima facie case for dismissal based upon a violation by alleging, in a motion to dismiss, that he was brought to trial after expiration of the applicable speedy trial period. State v. Grinnell (1996),112 Ohio App.3d 124. Upon such a showing, the burden shifts to the state, and it must produce evidence demonstrating that actions or events chargeable to the defendant extended or tolled the time for speedy trial, and consequently the defendant's right to a speedy trial was not violated. See, State v. Butcher (1996), 27 Ohio St.3d 28.
Any extension of the time beyond the statutory period does not necessarily violate the right. State v. Knapp (Oct. 21, 1991), Clermont App. No. CA90-08-075, unreported, 1991 Ohio App. LEXIS 5019, at *13-14. "Although the constitution supports a right to a speedy trial in a criminal case, there is no constitutional basis to quantify the right into a specified number of days or months." Id. at *14, citing Barkerv. Wingo (1972), 407 U.S. 514, 523. "In deciding whether the accused is deprived of his constitutional right to a speedy trial, the following factors must be balanced: the length of the delay, the reason for thedelay, the accused's assertion of the right, and the prejudice to the accused arising from the delay." (Emphasis added.) Id., citing Wingo at 530. As previously noted, the time limit may be extended on the basis of a "trial court's sua sponte continuance, if the continuance is reasonable in both purpose and length as demonstrated in the record." State v.Washington (Nov. 26, 1997), Summit App. No. 18199, unreported, 1997 Ohio App. LEXIS 5304, at *5, citing State v. Lee (1976), 48 Ohio St.2d 208,209.
Nevertheless, while a trial may be conducted beyond the statutory time limit, the state is not necessarily entitled to such a trial. In Gragg, the court noted that "[p]ractices that undercut the implementation of the `speedy trial' provisions of R.C. 2945.71 and 2945.73 cannot be used to extend the prescribed statutory time limits." Id. at *6, citing Aurorav. Patrick (1980), 61 Ohio St.2d 107, 108. Furthermore, the provisions of R.C. 2945 permitting extensions of time are to be strictly construed against the state. Id., citing State v. Pachay (1980), 64 Ohio St.2d 218,221.
A trial court has limited discretion in determining what sanctions to impose for a discovery violation. Had the court used its discretion to impose a continuance, the law would support that use of discretion. However, that is not the same as saying the state is entitled to a particular use of discretion and, in fact, such an entitlement would be contradictory. This case is distinguishable from Ross. In Ross, the new witness was discovered and produced one day before trial. In this case, as the court noted, the state had multiple opportunities to comply, and to do what it should have done in the first place, yet it failed to comply. Then, the state was in the position of saying that "this time we will do what you told us to do three times before, and did not do, if you give us a continuance at the expense of the defendant."
Crim.R. 16(E)(3) specifically states that a court "may make such other order as it deems just under the circumstances." It is clear from the record that the court recognized the defense might require a significant amount of time to prepare the case.
The denial of a continuance, and the consequent dismissal of the charge was not inconsistent with the purpose of the discovery rules. The philosophy of the criminal rules is to remove the element of gamesmanship from a trial. Regardless of whether the state's actions were intentional in this case, reversing the trial court's use of discretion in this matter would subsidize such behavior in the future. It would give the green light to gamesmanship.
The trial court was within the proper bounds of its discretion in dismissing the charge. Appellant's assignment of error is without merit. The judgment of the trial court is affirmed.
 ______________________________________ JUDGE WILLIAM M. O'NEILL
FORD, J., concurs, GRENDELL, J., concurs in judgment only.